# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | | |
|---|---|---|
| HASSANIN ALY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-CV-6069-SJ-DGK |
| | ) | |
| HANZADA FOR IMPORT & EXPORT | ) | |
| COMPANY, LTD., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER VACATING THE ENTRY OF DEFAULT AND
## DENYING HANZADA'S 12(b) MOTION

This case concerns commissions on beef exports from Missouri to Egypt. Defendant Hanzada for Import & Export Company, Ltd. ("Hanzada"), an Egyptian beef importer, enlisted Plaintiff Hassanin Aly ("Aly"), a business promoter, to help Hanzada establish a business connection with an American packing company and beef processor in Kansas City. Although Hanzada agreed to compensate Aly for facilitating the connection, Aly claims that Hanzada never paid him. Aly sued. After Hanzada failed to appear, Aly secured an entry of default.

Pending before the Court are Aly's Motion for Default Judgment (Doc. 18) and Hanzada's "Rule 12(b)(6) Motion to Dismiss & Request for Leave to File Further Affidavits and Suggestion [sic] in Support of Motion to Dismiss" (Doc. 27). After carefully reviewing the parties' briefing, the Court GRANTS in part and DENIES in part Hanzada's motion and DENIES Aly's motion.[1]

---

[1] Hanzada requests a hearing to present oral argument on its motion (Doc. 33, at 4). Because the record adequately presents the relevant facts and legal contentions, the Court denies Hanzada's request. *See* Fed. R. Civ. P. 78(b).

**Background**

Hassanin Aly is a dual citizen of the United States and the Arab Republic of Egypt. At the time he filed the Complaint, Aly lived in the United States and was a citizen of Ohio where he worked as a business promoter.

Hanzada is a limited liability company created under the laws of Egypt and headquartered in Cairo, Egypt. Its principals are Samy Sobhy Eliwa,[2] Samir Sobhy Eliwa, and Selim Sobhy Eliwa, three brothers and citizens of Egypt. Hanzada's business model is to buy beef products wholesale from American meat packers and processors, import them into Egypt, and then sell them to Egyptian distributors and retailers.

In 2006, Hanzada sought to forge a business alliance with the National Beef Packing Company ("National Beef"), a meat packer and processor headquartered in Kansas City, Missouri. To consummate a sales contract with National Beef, Hanzada sought help from Aly, who had facilitated a similar business connection between Hanzada and another beef packer in Omaha. Aly and Samy Sobhy Eliwa, acting on behalf of Hanzada, concluded an oral contract to that end: Aly would help establish an export-import business relationship between National Beef and Hanzada, and Hanzada would pay Aly $10 per metric ton of beef that Hanzada purchased from National Beef.

Hanzada would later assert that it never entered a contract with Aly and that Samy Sobhy Eliwa never had the authority to enter any contracts that would bind Hanzada. In support, Hanzada filed a document entitled "Extract of Commercial Register No.: 8031" (Doc. 33-1). This document, which appears akin to incorporation papers, does not bear a clear date of creation or filing. The only indication of when this document was created appears to be: "Approved:

---

[2] The record alternately refers to Samy Sobhy Eliwa as Samy Shaheen. This Order uses the former name for consistency and clarity.

Ministry of Foreign Affairs of the Arab Republic of Egypt 07/08/2011" (Doc. 33-1, at 9). The extract does not list Samy Sobhy Eliwa as a member or partner of the business.

According to Aly, he promptly began fulfilling his end of the bargain. He arranged meetings between Samy Sobhy Eliwa and National Beef executives, met with National Beef employees himself, and generally advocated for Hanzada's services to National Beef. Aly's efforts succeeded; National Beef sold its first shipment of beef products to Hanzada in August 2008.

However, Hanzada did not pay Aly commissions as it promised to do under the contract. On July 11, 2012, Aly sued Hanzada in this Court for breach of contract, claiming money damages of at least $472,050.00 (Doc. 1, at 4). After Aly filed the Complaint, he had to serve the Summons and Complaint on Hanzada in Egypt. This proved to be a lengthy and difficult process.

Aly's agent served Selim Sobhy Eliwa for Hanzada on July 17, 2012 at 4 El Mabeeda Lane, El Anwar, Old Egypt, Cairo (the "El Mabeeda Lane Address") (Doc. 3). Hanzada never appeared. As Aly prepared to move for an entry of default, he realized that his method of service might not have comported with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention").[3] Aly's doubts were well-founded: service on business entities in a foreign country must comply with the Hague Convention if applicable. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988); *see* Fed. R. Civ. P. 4(f)(1).

The Hague Convention is a multinational treaty formed in 1965 to create "an appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to

---

[3] Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 656 U.N.T.S. 163.

the notice of the addressee in sufficient time." Hague Convention pmbl., 20 U.S.T. 361. The Convention requires each signatory to establish a "Central Authority" to process requests for service coming from other signatories. *Id.* art. 2. The Central Authority then serves the document according to a method prescribed by that country's domestic law. *Id.* art. 5(a). Once the Central Authority serves the process (or arranges for another agency to do so), it must complete a form certifying that it has done so. *Id.* art. 6. If the Central Authority refuses to complete the certification but the service bears certain indicia of reliability, then an American court can excuse the failure to produce a certificate. *Id.* art. 15. Egypt is a signatory to the Convention.[4] The Ministry of Justice discharges Egypt's Central Authority obligations under the Convention,[5] although the Ministry of Foreign Affairs apparently assists the Ministry of Justice in its efforts.

Afraid that his service might have been deficient under the Hague Convention, Aly tried again. Aly sent two copies of the Summons and Complaint—one set of copies in the original English and one set translated into Arabic—and a blank Hague certificate of service to the Ministry of Justice through Federal Express. The Ministry of Justice received Aly's documents and attempted to serve them on Hanzada at two addresses: 114 Hazan El Anwar Street, Old Egypt, Cairo (the "Hazan El Anwar Street Address") and Industrial Zone, Part 15, Building 12009, El Obour City, Cairo. Employees at those addresses refused to accept the documents, so the Ministry of Justice bailiff instead served the documents at the police station in Old Cairo on December 5, 2012.

---

[4] *Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Members of the Organisation, Egypt*, Hague Conference on Private International Law, http://www.hcch.net/index_en.php?act=states.details&sid=33 (last visited June 23, 2014).

[5] *Egypt—Central Authority & Practical Information*, Hague Conference on Private International Law, http://www.hcch.net/index_en.php?act=authorities.details&aid=407 (last updated Oct. 20, 2009).

Aly produced evidence that leaving the Summons and Complaint at a police station is permissible under Egyptian internal law, as it must be to comply with Article 5(a) of the Hague Convention. This evidence comprises letters from: the American Vice Consul in Cairo (Doc. 16-1, at 1) (stating that the Ministry of Foreign Affairs indicated its service "to the district (old Cairo) police station [was] per local service procedures"); the Egyptian Ministry of Justice, Department of International & Cultural Cooperation (Doc. 16-3, at 1) ("Kindly take all that is necessary towards addressing the American side and notifying it that the notice has been delivered in accordance with the Egyptian Procedural Law."); and the Egyptian Ministry of Foreign Affairs, Alien Consular Affairs and Attestations (Doc. 16-4, at 1) ("[T]he International Cooperation Department at the Ministry of Justice has stated that notification through administrative means is deemed a valid notification according to the Egyptian procedural law.").

The Ministry of Justice informed Aly through the United States Embassy in Cairo what it had done. Aly then petitioned the Ministry of Justice to complete the blank certificate of service he had sent, as required by Article 6 of the Hague Convention. Working through the United States Embassy, Aly learned in April 2013 that the Ministry of Justice would not honor his request and complete the certificate. Aly flew to Cairo to personally lobby diplomatic officials to assist in securing the certificate, to no avail. On May 23, 2013, an official with the American Citizens Services in the Consular Section of the Cairo embassy wrote Aly, "We actually can't get the MFA [Ministry of Foreign Affairs] to sign the paper you need." (Doc. 14-1, at 1). Consular officials passed along Aly's request to the Ministry of Justice as well, but "they informed us [the American embassy] that they would not fill out the form, and that the documents we sent to you suffice as evidence that they attempted to serve the defendant" (Doc. 14-1, at 2).

At this time, Aly apparently accepted that the Egyptian government would not sign his certificate. He filed a second return of service on July 30, 2013 representing that the police-station service satisfied Federal Rule of Civil Procedure 4 (Doc. 16). He then moved for an entry of default (Doc. 21), which was granted on December 11, 2013 (Doc. 23).

On December 10, 2013, Aly sent copies of his motion for an entry of default to Hanzada at both the El Mabeeda Lane Address and the Hazan El Anwar Street Address in Cairo (Doc. 22). Ten days later, Hanzada moved to admit its attorney pro hac vice (Doc. 24), its first activity in this litigation.

Two motions are now pending before the Court. First, Hanzada moves under Federal Rule of Civil Procedure 12(b)(1)–(7) to dismiss the Complaint (Doc. 27). Second, Aly moves for default judgment (Doc. 18).

## Discussion

**I. The Court has subject-matter jurisdiction over this case.**

Hanzada challenges the Court's subject-matter jurisdiction under Rule 12(b)(1). The Court entertains this argument first because a federal court generally must determine whether it has subject-matter jurisdiction before ruling on the merits of a case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998).

For a district court to exercise subject-matter jurisdiction on the basis of diversity jurisdiction, as Aly invokes here, the adverse parties must be "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). Citizenship is measured as of the time the complaint is filed. *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004).

Aly is a citizen of Ohio and Hanzada is a citizen of Egypt. Thus, diversity is met here. *See* 28 U.S.C. § 1332(a)(2). Hanzada argues that Aly was in fact a resident of Egypt at the time

he negotiated, entered, and performed his contract, but Hanzada's argument fails because citizenship is measured at the time of filing. The Court has subject-matter jurisdiction.

## II. The Court vacates the entry of default.

The remainder of Hanzada's motion raises six defenses under Rule 12(b). Default is entered only after "party against whom a judgment for affirmative relief is sought has *failed to plead* or otherwise defend." Fed. R. Civ. P. 55(a) (emphasis added). Rule 12(b) defenses must be asserted in a pleading or in a motion before the answer is filed, or else they are waived. Fed. R. Civ. P. 12(b). Because defaulting parties have necessarily missed the opportunity to raise Rule 12(b) defenses, Rule 12(b) motions are untimely at the default entry stage. Hanzada provides no legal basis for the Court to consider Rule 12(b) motions from a party in default.

Here, the clerk entered default against Hanzada. In this posture, Hanzada failed to timely file a Rule 12(b) motion, and so the Court cannot presently grant Hanzada this precise relief.

Instead, a defaulting party can move to set aside the entry of default. The arguments in Hanzada's suggestions can be transposed to support a motion to vacate the entry of default, and its reply brief explicitly references setting aside the default entry. Thus, although styled as a Rule 12(b) motion, Hanzada's motion is construed as one to set aside the entry of default under Rule 55(c).

Rule 55(c) permits the court to set aside a default entry for "good cause." Fed. R. Civ. P. 55(c). Generally, there is a "judicial preference for adjudication on the merits." *Oberstar v. F.D.I.C.*, 987 F.2d 494, 504 (8th Cir. 1993). Two forms of good cause exist: (1) categorically, such as when the defaulting party was not properly served or has not submitted to the jurisdiction of the court; and (2) equitably, if the court balances certain factors and determines it should sacrifice finality and strict adherence to procedural rules for litigation on the merits. The Court

examines each of these bases in turn to determine if setting aside the entry of default is appropriate.

### A. There is no good cause to set aside the entry of default on service grounds.

Hanzada argues that the police-station service was improper, and thus cannot be grounds for a default entry.[6] Without proper service of process, a court has no power over the defendant and cannot proceed to exercise judgment, default or otherwise, on the defendant. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Thus, where a defaulting defendant was never served, "good cause" exists to set aside the entry of default because any default judgment entered would be void. *Jones v. Davey*, 702 F. Supp. 752, 754 (E.D. Mo. 1988); *see* Fed. R. Civ. P. 55(c), 60(b)(4).

To determine whether a plaintiff properly served the defendant, the court must determine whether the plaintiff complied with both the statutory and constitutional standards for service. *Omni Capital Int'l*, 484 U.S. at 104. The Court now considers whether Aly's efforts to serve Hanzada satisfy each.

#### 1. Aly satisfied the Hague Convention, which is the statutory standard for service of process.

The statutory standard for service is Federal Rule of Civil Procedure 4, which directs plaintiffs to the Hague Convention when they want to serve a foreign defendant residing in a signatory country. Fed. R. Civ. P. 4(f)(1), (h)(2); *Schlunk*, 486 U.S. at 705. Because Egypt is a signatory to the Convention, Aly's service on Hanzada was proper only if Aly complied with the procedures outlined in the Convention. As the plaintiff, Aly has the burden of making a prima facie case for proper service, which Hanzada may then refute. *See Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995).

---

[6] Although Hanzada frames this argument as a Rule 12(b)(5) motion attacking the mode of delivery of the Summons and Complaint, the Court repurposes these arguments to decide this Rule 55(c) issue.

Three articles of the Convention are pertinent to this case: Articles 5(a), 6, and 15. Under Article 5(a), the party seeking to serve legal documents must make a request to the foreign country's Central Authority, which may serve the documents "by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory." Hague Convention art. 5(a).

Article 6 then requires the Central Authority to "complete a certificate in the form of the model annexed to the present Convention." *Id.* art. 6. The certificate is a one-page form attesting that the summons and the complaint have been served and describing the details of the service. *Id.* annex. Under Article 15, the forum may excuse the Central Authority's failure to return a certificate if certain conditions are met. *Id.* art 15. The Court examines whether the service in this case satisfies each of these relevant sections.

### a. Aly is excused from securing a Hague certificate of service.

Because Aly presents no certificate, the first consideration is whether he meets the Article 15 exception. The Central Authority does not return a completed certificate to the party requesting service, a court may still find that service was proper and proceed to enter a default judgment if the plaintiff: (1) transmitted the documents by a method outlined in the Convention; (2) has not received a response from the Central Authority for at least six months; and (3) has made "every reasonable effort" to obtain the certificate from the relevant authorities. *Id.* art. 15.

Here, Aly satisfies the Article 15 certificate exception. First, he sent the Summons and Complaint in English and in Arabic to the Ministry of Justice on November 15, 2012. Second, at least six months passed between when the Ministry of Justice left the documents at the police station on December 5, 2012 and when Aly filed his second return of service with the Court on July 30, 2013.

Third, Aly made "every reasonable effort" during that time to impel the Ministry of Justice to complete the certificate. He followed every provision of the Hague Convention that he could, giving the Ministry of Justice the proper paperwork to serve Hanzada and waiting to hear that the Ministry of Justice had served Hanzada. He then petitioned the Ministry of Justice directly. When that failed, he lobbied the American Embassy for help and flew to Cairo to meet with the Egyptian government. Collectively, these actions are "every reasonable effort." *See Coombs v. Iorio*, No. CIV-06-060-SPS, 2008 WL 4104529, at *1, 3 (E.D. Okla. Aug. 28, 2008) (finding that a plaintiff was excused from the certificate requirement of the Hague Convention where the relevant Central Authority had faxed letters indicating service upon the defendants and he made "repeated attempts to obtain the proper certificates"). Aly satisfies the procedural requirements of the Hague Convention certificate.[7]

### b. The Egyptian Ministry of Justice's service complied with Egyptian internal law.

Next, the Court determines whether the Central Authority's service was "by a method prescribed by its internal law." Hague Convention art. 5(a). Determinations of foreign law are questions of law committed to the court that can be resolved by considering "any relevant material or source . . . whether or not . . . admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. Thus, the Court must assess the record evidence to determine the "internal law" of Egypt.

Here, the evidence demonstrates that the service complied with Egyptian law. The American Vice Consul in Cairo, the Egyptian Ministry of Justice, and the Egyptian Ministry of

---

[7] Relatedly, Hanzada argues that service is not statutorily valid because Aly failed to file any certificate purporting to have served Hanzada. Under Rule 4(*l*), a plaintiff must prove service was completed. However, when service is made pursuant to an international service treaty like the Hague Convention, service need be proved only "as provided in the applicable treaty or convention." Fed. R. Civ. P. 4(*l*)(2)(A). Article 15 of the Hague Convention permits service without a formal certificate in certain situations. Here, Aly satisfied Article 15 of the Hague Convention and so has proved service as required by Rule 4(*l*). Aly did not need to file any additional documents with the Court.

Foreign Affairs wrote messages to Aly assuring him that the Ministry of Justice had served the Summons and Complaint to the Old Cairo police station in accordance with Egyptian internal law (Docs. 16-1, 16-3, 16-4).[8] The Court thus finds that the police-station service satisfied Egyptian internal law as required by the Hague Convention. *See* Fed. R. Civ. P. 44.1.

Hanzada argues that the service did not conform with Egyptian internal law because the "document supporting [the police-station service] failed to assert that it had been done pursuant to any specific provision of the Egyptian Civil Code" (Doc. 27, at 5). However, Aly the satisfaction of Egyptian law can be shown by any relevant material or source, including statements by the ambassadorial staff and the Egyptian authorities. *See* Fed. R. Civ. P. 44.1. As such, Aly does not need to cite specific parts of the Egyptian civil code. Of course, Hanzada could subvert Aly's prima facie case by indicating which provisions of Egyptian law Aly contravened, but it failed to do so here. *See, e.g.*, *Labelle v. Martin*, No. 3:12-CV-239-GCM, 2012 WL 3704717, at *1–2 (W.D.N.C. Aug. 27, 2012) (holding service in Canada to be deficient where the defendant cited specific parts of the Quebec Code of Civil Procedure that were patently not followed). Whether Aly cited specific sections of Egyptian law is thus irrelevant.

Even though the Ministry of Justice did not formally complete a certificate, Aly has presented sufficient evidence that he complied with all relevant components of the Hague Convention. Accordingly, Aly's service of Hanzada satisfies the Federal Rules of Civil Procedure.

**2. Aly satisfies the constitutional standard for service of process under *Mullane*.**

The Court must now determine whether the Due Process Clause of the Constitution permits the police-station service in this case. *See Burda Media, Inc. v. Viertel*, 417 F.3d 292,

---

[8] Aly provided letters from the two Egyptian ministries both in the original Arabic and in translated English, and Hanzada agrees that those letters were translated correctly (Doc. 27-2, at 12–13).

303 (2d Cir. 2005). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see* Fed. R. Civ. P. 4(f)(1) (endorsing the Hague Convention's procedures as means "reasonably calculated to give notice"). "The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane*, 339 U.S. at 315.

From what the Court can tell, Aly's efforts were reasonably calculated to apprise Hanzada of this litigation and give it an opportunity to participate. Aly personally served a Hanzada representative in July 2012. The Ministry of Justice attempted to personally serve Hanzada again in December, then left the Summons and Complaint at the police station as permitted in Egypt. As such service is proper in Egypt, the Court can expect that Hanzada, an Egyptian company, would know it needed to check with the police station for any process.

Further, the Cairo addresses in the record strongly hint that Hanzada had actual notice, which suggests that Aly's methods were reasonably calculated to inform Hanzada of this litigation. Aly claims he served Hanzada through Selim Sobhy Eliwa on July 2012 at the El Mabeeda Lane Address. Although Selim Sobhy Eliwa's affidavit states that Hanzada did not maintain an office at the Hazan El Anwar Street Address, he does not deny Aly's allegation that Hanzada is headquartered at the El Mabeeda Lane Address. In fact, Hanzada has never stated where its office actually is. Further, Hanzada began participating in this litigation immediately after Aly mailed a copy of his motion for a default judgment to the El Mabeeda Lane Address. Hanzada has not explained how it otherwise became aware of this litigation, if not by receiving a copy of the motion at the same address that Aly had served the year prior.

Aly has thus established a prima facie case that the service was constitutional, and the Court is satisfied that Aly acted like a party "desirous of actually informing" Hanzada of this lawsuit. *Id.*

Accordingly, under both Rule 4 and *Mullane* there is no good cause for the Court to vacate the entry of default against Hanzada on the basis that service of process was deficient. Some other good cause must exist for the Court to grant Hanzada that relief.

### B. The Court has personal jurisdiction over Hanzada.

Next, the Court must ensure that it has personal jurisdiction over Hanzada. Because a judgment rendered without personal jurisdiction is void, a lack of personal jurisdiction over the defaulting party constitutes "good cause" to vacate an entry of default. *Marcantonio v. Primorsk Shipping Corp.*, 206 F. Supp. 2d 54, 60 (D. Mass. 2002); *see* Fed. R. Civ. P. 60(b)(4) (permitting a district court to vacate a default judgment if the judgment is void).[9]

In a diversity case like this one, personal jurisdiction exists only to the extent permitted by the forum state's so-called "long-arm statute" and the Due Process Clause of the Fourteenth Amendment. *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 909 (8th Cir. 2012); *see* Fed. R. Civ. P. 4(k)(1)(A). The plaintiff bears the burden of establishing a prima facie showing that personal jurisdiction exists over the defendant. *Myers*, 689 F.3d at 909. If the defendant denies jurisdiction, then the plaintiff must prove jurisdiction by affidavits, testimony, or documents. *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012).

For both the long-arm statute and the constitutional inquiries, Hanzada makes the same general argument: Hanzada is an Egyptian corporation with no connection to Missouri.

---

[9] Although Hanzada frames this argument as a Rule 12(b)(2) motion to dismiss the Complaint for lack of personal jurisdiction, the Court repurposes these arguments to decide this Rule 55(c) issue.

13

Particularly, Hanzada argues that it has never made a contract in Missouri or with any company connected to Missouri.

### 1. Missouri's long-arm statute permits the exercise of personal jurisdiction over Hanzada.

The first determination the Court must make is whether the exercise of personal jurisdiction comports with the forum state's long-arm statute. That statute here is Mo. Rev. Stat. § 506.500.1, which states in pertinent part:

> Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts: . . .
> (2) The making of any contract within this state . . . .

Mo. Rev. Stat. § 506.500.1. The reach of § 506.500.1 is a question of Missouri law. *See Myers*, 689 F.3d at 910; 28 U.S.C. § 1652. Under Missouri law, a contract is made where acceptance occurs. *Strobehn v. Mason*, 397 S.W.3d 487, 498 (Mo. Ct. App. 2013).

Here, Aly alleges that he made a contract with Hanzada. Aly and Samy Sobhy Eliwa, Hanzada's representative, formed the contract in person in Kansas City, Missouri. As the place where acceptance occurred, Missouri is where the contract was made. Aly has made a prima facie case that Missouri's long-arm statute is satisfied.

Hanzada's president, Selim Sobhy Eliwa, swears that Hanzada never entered into the contract because Samy Sobhy Eliwa has no authorization to enter into contracts on behalf of Hanzada. Hanzada thus shifts the burden back to Aly to prove through affidavits, testimony, or documents that a contract truly did exist. *See Dairy Farmers of Am.*, 702 F.3d at 475.

Assessing the proofs, the Court finds that the long-arm statute is satisfied. Aly provides an affidavit swearing that the contract existed and detailing its origins and terms. Hanzada's proofs, however, do not directly refute Aly's affidavit. To support its claim that Samy Sobhy

Eliwa was never a director of the company authorized to enter contracts on Hanzada's behalf, Hanzada attaches a copy of the Extract of Commercial Register. The only relevant date on this document is the creation date of July 8, 2011. Thus, the Extract of Commercial Register does not address whether Samy Sobhy Eliwa lacked the authority to bind Hanzada in a contract in 2006, which is when Aly alleges that the oral contract was made. Personal jurisdiction here satisfies Missouri's long-arm statute.

### 2. The Constitution permits the Court to exercise personal jurisdiction over Hanzada.

Next, the Court must analyze whether an exercise of jurisdiction over Hanzada comports with the Fourteenth Amendment. Personal jurisdiction takes one of two forms: general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). A court has general jurisdiction over a party whose contacts with the forum are continuous and systematic. *Id.* A court has specific jurisdiction over a party only when the injury giving rise to the lawsuit is related to the defendant's contacts with the forum. *Id.* Because the Court finds that specific jurisdiction exists over Hanzada in Missouri, it need not examine whether general jurisdiction principles apply.

Specific jurisdiction exists if the defendant has "certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). The Eighth Circuit has distilled this maxim into a five-factor test: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) Missouri's interest in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *Myers*, 689 F.3d at 911. The first three factors are primary, and the latter two are secondary. *Id.*

The first two considerations are the strength and quantity of Hanzada's contacts with Missouri. A contract between two parties does not automatically establish sufficient minimum contacts in the home of a contracting party. *Burger King v. Rudzewicz*, 471 U.S. 462, 478 (1985). Rather, the court should evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing [to determine] whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479.

In arranging the contract at issue, Hanzada acquired strong, numerous, and relevant contacts in Missouri. Hanzada's representative Samy Sobhy Eliwa traveled to Missouri, where he contacted Aly. He negotiated and concluded the contract in Missouri. The contract's focus was establishing a business relationship between Hanzada and National Beef, a Missouri corporation. As Hanzada expected and intended, the contract obliged Aly to network with National Beef executives in Missouri for Hanzada's benefit. Thus, the first two prongs favor the exercise of personal jurisdiction.

The third consideration is the relationship of the cause of action to the contacts. The Complaint's sole cause of action is for breach of contract. This count is predicated exclusively on Hanzada's breach of its oral contract with Aly, which gave rise to several Missouri contacts. This factor favors the exercise of personal jurisdiction.

The fourth consideration is Missouri's interest in providing a forum for its residents. No party here is a Missouri resident, but Hanzada injured Aly inside Missouri. Missouri favors protecting contractual expectations arising within its borders, which gives it an interest in providing a forum. This factor favors the exercise of personal jurisdiction.

The fifth and final consideration is the convenience or inconvenience to the parties. As the party that filed this lawsuit here, Aly obviously does not find this venue inconvenient. Hanzada, however, faces great inconvenience. As an Egyptian business association with only Egyptian principals, Hanzada stands to incur great cost and inconvenience in conducting transnational discovery and possibly having to fly witnesses and executives from Egypt to defend a lawsuit in Missouri. This factor opposes a finding of personal jurisdiction.

In sum, four of the five factors—and all three primary factors—indicate that exercising personal jurisdiction over Hanzada is constitutional. Therefore, the Court finds that no good cause exists on personal jurisdictional grounds to vacate the default entry. The Court must examine if any other basis exists to set aside the entry of default.

**C. The Court has good cause to set aside the entry of default on other grounds.**

In all other circumstances, to determine "good cause" a court should examine: (1) the blameworthiness and culpability of the defaulting party; (2) whether the defaulting party has a meritorious defense; and (3) the prejudice to the party that has already secured an entry of default. *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998). The Court weighs each factor in turn.

**1. Hanzada is not particularly blameworthy for its default.**

Blameworthiness encompasses "contumacious or intentional delay or disregard for deadlines and procedurals." *Id.* The concept precludes any "'marginal failure' to meet pleading or other deadlines." *Id.* (citing cases where default judgments were reversed for delays of thirty-two days or less).

Hanzada was very late to appear in this suit even though it was properly and timely served. The first activity by Hanzada was over thirteen months after it was served. This

development occurred well outside the twenty-one day window to answer the Complaint, *see* Fed. R. Civ. P. 12(a)(1)(A)(i),[10] and well beyond the thirty-two day delays deemed to be mere "marginal failure[s]" in other cases. *See Johnson*, 140 F.3d at 784. Hanzada's delay is not excused by its claim that it never saw the Summons and Complaint left at the Old Cairo police station. *See Stephenson v. El-Batrawi*, 524 F.3d 907, 913–14 (8th Cir. 2008) (finding that the district court was within its discretion to determine that a properly served party was blameworthy in his failure to timely appear even though he denied receiving actual notice).

On the other hand, Hanzada's neglect falls short of intentional disregard or "contumacious" conduct. The record does not support any conclusion that Hanzada was willfully or intentionally disregarding this lawsuit during the thirteen months that it was absent from the case. Therefore, the Court finds this factor favors a finding of good cause.

**2. Hanzada has a meritorious defense.**

The second factor is whether the defaulting party has a meritorious defense. A party has a meritorious defense if "the proffered evidence would permit a finding for the defaulting party." *Johnson*, 140 F.3d at 785 (internal quotation marks omitted). The court should be mindful of any "possibility that the outcome . . . after a full trial will be contrary to the result achieved by the default." *Stephenson*, 524 F.3d at 914.

Through Selim Sobhy Eliwa's affidavit, Hanzada raises a single defense: Samy Sobhy Eliwa was not authorized to enter contracts on behalf of Hanzada. If the trier of fact believes this assertion, then it could enter judgment in Hanzada's favor. The Court finds that Hanzada presents a meritorious defense, which favors setting aside the default entry.

---

[10] The Court notes that Hanzada has still not filed an answer.

### 3. Vacating the entry of default will not prejudice Aly.

Finally, the Court must consider how Aly would be prejudiced if the Court granted Hanzada's motion to set aside the default entry. Prejudice results from concrete difficulties such as "loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Stephenson*, 524 F.3d at 915 (quoting *Johnson*, 140 F.3d at 785). Delay alone and the fact that the winning party would now have to litigate the case are insufficient to establish prejudice. *Id.*

Neither party addresses what prejudice Aly will endure if the Court vacates the entry of default. Upon its own review of the record, the Court finds that Aly does not stand to suffer any prejudice beyond delay and the expected expense and effort of litigating this case. In the months between serving Hanzada and moving for an entry of default, Aly collected evidence on how much beef Hanzada imported, which determines the amount of commissions he is owed (Doc. 18-2). However, this evidence is probative of damages, which Aly would have had to prove even if the Court left intact the entry of default. *See Stephenson*, 524 F.3d at 916 (holding that where a plaintiff claims uncertain damages against a defaulting party, the plaintiff must prove the damages in a supplemental proceeding brought under Rule 55(b)(2)(B)). Besides discovery on damages, Aly does not appear to have conducted any other discovery or case management, and this matter is still in its early stages. Nor does Aly appear to be in any rush to secure judgment; the Court previously had to order Aly to show cause as to why the case should not be dismissed for failure to prosecute (Doc. 17). The Court finds that granting Hanzada's motion will not prejudice Aly.

Considering all three equitable factors, the Court finds good cause to vacate the default entered against Hanzada. The Court grants the part of Hanzada's motion that can be construed to seek vacation of the default entry.

The Court can now turn to Aly's motion for a default judgment. An entry of default must precede grant of a default judgment. *Johnson*, 140 F.3d at 783. Because Hanzada is no longer in default, Aly may not move for a default judgment. The Court denies his motion.

### III. The Court denies the remainder of Hanzada's Rule 12(b) motion.

The Court has incidentally addressed most of Hanzada's motion—those parts raising the defenses of Rules 12(b)(1), (2), and (5)—earlier in this Order, and those parts are denied for the reasons discussed. The Court now takes up the remaining arguments in Hanzada's motion, which are brought pursuant to Rules 12(b)(3), (4), (6), and (7). Motions must "state with particularity the grounds for seeking the order." Fed. R. Civ. P. 7(b)(1)(B). Hanzada neither elaborates facts nor cites law such that the Court can determine the merit of these defenses. The Court denies these parts of Hanzada's motion.

### Conclusion

For the reasons discussed above, Hanzada's "Rule 12(b) Motion to Dismiss & Request for Leave to File Further Affidavits and Suggestion[s] in Support of Motion to Dismiss" (Doc. 27) is GRANTED IN PART and DENIED IN PART. The Entry of Default by the Clerk (Doc. 23) is STRICKEN. Aly's Motion for Default Judgment (Doc. 18) is DENIED.

Hanzada is ORDERED to file an answer or other responsive pleading by July 14, 2014.

**IT IS SO ORDERED.**

/s/ Greg Kays
GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Date: June 23, 2014

20