# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI ST. JOSEPH DIVISION

| | |
|---|---|
| HASSANIN ALY, ) | Case No. 5:12-cv-06069 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **SUGGESTION IN SUPPORT OF** |
| ) | **MOTION FOR SUMMARY** |
| | **JUDGEMENT** |
| HANZADA for IMPORT & EXPORT ) | |
| COMPANY, LTD., ) | |
| ) | |
| ) | |
| Defendant. ) | |

In support of the contemporaneously filed Motion for Summary Judgment the Defendant now submits this suggestion showcasing the authority which under the fact and circumstance existing in the present case demand summary judgment and dismissal of suit.

## INTRODUCTION

Plaintiff Hassanin Aly, a citizen of both Egypt and the United States brought suit against Hanzada for Import and Export Company, Ltd., an Egyptian corporation whose business presence in the United States is limited to the payment of funds in exchange for the shipment of agricultural product to Cairo, Egypt, claiming in his single cause of action that Hanzada had breached its contract with him. Suit was filed on July 11, 2012. On July 30, 2013, over a year later after having been granted extended leaves of time within which to file Proof of Service on no less than four occasions, an unexecuted Proof of Service was filed, indicating a type of

common law substitute service had been made some eight months prior on December 5, 2012. Said service was contested but ultimately found sufficient by this court.

The complaint alleges a single cause of action, breach of contract. Plaintiff's Complaint Par 25 (Hassanin v. Hanzada Case Number 5:12-cv-6069 Document 1 filed 7/11/12). In particular the Plaintiff alleges that in 2006 an oral agreement was entered into whereby Hanzada would pay to Hassanin $10 U.S. for every ton of beef product it might at some point come to purchase from National Beef. Complaint par 14. (Document 1 filed 7/11/12). National Beef is headquartered here in Missouri although they are not a party to this suit. It is the Defendant's contention that the present suit seeking to enforce an oral agreement entered into in 2006 and sued upon in 2012, which was meant to obligate the Defendant to make payment upon future product purchases without limitation as to time, is unenforceable as a matter of law pursuant to both the Statute of Limitations and more poignantly the Statute of Frauds.

## STANDARD OF REVIEW

Summary judgement is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law." Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Once the moving party has met its initial burden by showing there are no genuine issues of material fact to be decided at trial, the non-moving party "must go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." Celox Corp. v. Catrett, 477 U.S. 317 (1986). If the non-moving party fails to make a sufficient showing on any essential element of its case, summary judgement must be entered in favor of the moving party.

## STATEMENT OF MATERIAL FACTS

1. The complaint alleges a single cause of action, breach of contract. <u>Plaintiff's Complaint</u> Par 25 (<u>Hassanin v. Hanzada</u> Case Number 5:12-cv-6069 Document 1 filed 7/11/12).

2. The terms of the contact were according to both the complaint and sworn deposition of the Plaintiff "simple".

> "The terms of the Oral contract were simple - In exchange for Aly's services in establishing an export/import business relationship between National Beef and Hanzada, Hanzada agreed to pay Aly $10 U.S. for every metric ton of beef product Hanzada would purchase from National Beef."
>
> <u>Plaintiff's Complaint</u> Par 14 (<u>Hassanin v. Hanzada</u> Case Number 5:12-cv-6069 Document 1 filed 7/11/12).
>
> "[O]ur agreement [was] that [Hanzada] will pay me $10 per metric ton. It's as simple as that."
>
> <u>Deposition of Plaintiff Hassanin taken August 4, 2015 at page 79:25-80:2</u>.

3. The simple contract was allegedly established via oral agreement in 2006 although the Plaintiff is uncertain as to the exact date. <u>Plaintiff's Complaint</u> Par 14 (<u>Hassanin v. Hanzada</u> Case Number 5:12-cv-6069 Document 1 filed 7/11/12); <u>Deposition of Plaintiff Hassanin taken August 4, 2015 at page 132:14-24</u>. When questioned as to the date in 2006 when the agreement was entered into the Plaintiff stated Hassanin could provide no date upon with the agreement was entered into instead stating that "it started …after we had finalized Greater Omaha with the doctor, and [Sammy Sheehan] say Hassanin, you are successful no with Greeter Omaha. I let you know, that they have only eight or nine containers. I know Swift or National Beef or Packerland; they have more than 20 and almost to 50 containers. So work,

you know on this. You will get a lot of money if you're going to get $10 per metric ton. You know just try to get National Beef, you know." Deposition of Hassanin taken August 4, 2015 at page 90; 1-20. The Plaintiff also stated, "We did have the deal from 2006." Deposition of Hassanin taken August 4, 2015 at page 95:2.

When asked again "when did you make this deal" the Plaintiff responded "the first deal was in 2006…after that we made the deal again when we came to Omaha, you know because I always ask. You know, I don't get tired to ask. You know, so I ask him again. Then after that … we have the meeting with Mark Domanski I say "congratulations $10 per metric ton." He said "well we still don't know what will happen. And after that – he don't know what will happen if we going to get the deal or not. Then after that …I think it was in 2008, the beginning of 2008. I just wanted to remind you of one thing, you know you owe me $10 per metric ton after we conclude this deal….So it's basically, you know the whole thing." Deposition of Hassanin taken August 4, 2015 at page 91;20-93:5 1-20.

4. The sued upon oral agreement included no provision for cancelation or limitation upon the obligation of payment. Rather Hassanin stated in his deposition that the agreement between himself and Hanzada was completely oral and that the terms of the deal were restated in 2008 and 2009 when Sammy Sheehan, who is neither an officer nor director of Hanzada stated to him that "Hassanin, it's not only National Beef, anything coming from USA to Hanzada, to me you will have $10 per metric ton." Deposition of Plaintiff Hassanin taken August 4, 2015 at page 132:14-24. Alternatively in Hassanin's August 4, 2015 deposition he characterized the agreement that Hanzada has failed to fulfill as an "agreement that when the shipment arrive, it will be calculated, and [Hanzada] will pay $10 per metric ton for that shipment immediately after it arrive and stored in the cooler." Deposition of Plaintiff

Hassanin taken August 4, 2015 at page 103:4-9. *See also* Deposition of Plaintiff Hassanin taken August 4, 2015 at page 79 (stating that the agreement with the Defendant was that Defendant "will pay me $10 per metric ton. It's as simple as that.")

5. Evidence of the oral agreement exists only in the recollection of the Plaintiff as to statements made by Sammy Sheehan, who is neither an officer nor director of Hanzada. In particular in response to the question as to the date that the sued upon agreement was entered into by Hanzada Hassanin stated, he had an agreement "[w]ith Samy Shaheen, not with Hanzada". ." Deposition of Hassanin taken August 4, 2015 at page 90; 1-9.

## DISCUSSION

Hassanin seeks as damages his "commission" of $10 per metric ton of beef purchased by Hanzada over the course of the last eight years ($472,050) and additional compensation estimated in the amount of $74,027,950 presumably representing the present value of $10 per metric ton purchaser paid commission on expected purchases by Hanzada from National Beef from 2011 until the end of time. Again, all of this based on an oral agreement made, as Hassanin stated in his deposition not between himself and the Defendant but rather between himself and Sammy Sheehan on some date undetermined in 2006." Deposition of Hassanin taken August 4, 2015 at page 90; 1-20. Such an agreement which extends beyond one year in time and involves the payment of significant sums must be set out with sufficient in writing if it is going to be enforced. § 432.010, RSMo.(2014)

> No action shall be brought … upon any agreement that is not to be performed
> within one year from the making thereof, unless the agreement upon which
> the action shall be brought, or some memorandum or note thereof, shall be in
> writing and signed by the party to be charged therewith
> § 432.010, RSMo.(2014)

> "Whether a writing satisfies the statute of frauds is a question of law. Johnson v. Cook,

167 S.W.3d 258, 262[6] (Mo.App.2005); Ahrens v. Dodd, 863 S.W.2d 611, 613 (Mo.App.1992). If a writing clearly fails to satisfy the statute of frauds, the party invoking the statute is ordinarily entitled to summary judgment.[3] Arnold v. Broadmoor Dev. Co., 585 S.W.2d 564, 565 (Mo.App.1979); Smith v. Int'l Paper Co., 87 F.3d 245, 247 (8th Cir.1996) (applying Missouri law). … To satisfy the statute of frauds a writing must contain the essential terms of a contract. Johnson, 167 S.W.3d at 262[7]. The "essential terms" are the parties, the subject matter, the price, the consideration, and the promises on both sides." Doss & Harper Stone Co., Inc. v. Hoover Bros. Farms, Inc., 191 S.W.3d 59 (Mo.App. S.D. 2006).

In the present case the Plaintiff has only asserted the existence of one or more promissory statement alleged to amount to an obligation to pay in perpetuity a buyer's commission. Said another way said obligation was/is completely unlimited by time. As stated in the Complaint the agreement was entirely oral. It was alleged to have been made in 2006. It is the Plaintiff's contention that the 2006 "agreement" was to be applied as a binding contract to purchases which the Defendant, Hanzada For Import & Export Company, LTD. might but was not obligated to make once negotiations had concluded. It took two years before the first order was placed and fulfilled. By the Plaintiff's own admission this "simple" agreement failed to contain any cancelation provision. The fact that it took more than a year for Hanzada to secure the business took no one by surprise.

So to summarize, the Plaintiff alleges the existence of an oral agreement by which Hanzada was obligated to pay to the Plaintiff $10 on every metric ton of beef it might come to purchase from National Beef at any time in the future. This self-described simple oral agreement was entered into by the Plaintiff and Mr. Sammy Sheehan, who according to the Plaintiff was allegedly acting on behalf of the Defendant. That is to say it is the Plaintiff's contention that Mr. Sheehan,

who is neither an officer or director of Hanzada had been delegated authority to bind Hanzada in perpetuity to an obligation that is said to have given rise to $75,000,000 in liability. Two years passed between the time the agreement was allegedly entered into and the time the first payment would come due. During that time the Plaintiff has stated under oath that he would frequently remind the Defendant that he was expecting to receive $10 per metric ton once Hanzada started to purchase product from National Beef. Interestingly in his deposition the Plaintiff did indicate that Mr. Sheehan seemed to distance himself from this understanding whenever the Plaintiff brought the subject up, which he did several times over the course of the next three years. In other word the Plaintiff refused to recognize any right of cancelation on the part of Hanzada even before he had completed his portion of the bargain. Moreover without a cancelation provision the described agreement clearly contemplated and required adherence to its terms regardless of how far into the future a purchase form National Beef might be made. Said another way the oral agreement had an indefinite but unescapable term.

The "simple" agreement continued no mechanism for cancelation of this evergreen undying obligation of a $10 per ton commission payment due from the purchaser of the good. Indeed as described by the Plaintiff if Hanzada was to find another supplier of beef liver and use them for a period of 3 or four years and then find itself in a positon where it wanted to use again purchase National Beef product the Plaintiff would , but for the Statute of Frauds be in a position to demand payment. Such a result is untenable just as an agreement such as the one with the Plaintiff claims to have made on some date undetermined in 2006 is unenforceable on account of the application of the Missouri Statute of Frauds which states:

> "**No action shall be brought … upon any agreement that is not to be performed within one year from the making thereof…**" § 432.010, RSMo. (2010)(emphasis added)

Application of the forgoing statue to situations similar to that presented by the Plaintiff abound both within and without Missouri. *See E.g.* Adams v. One Park Place Investors, LLC, 315 S.W.3d 742 (Mo.App. W.D. 2010).(upholding grant of summary judgement on breach of contract claim when presented with what amounted to an employment contract without a cancelation provision) "[I]f the oral contract in question was not capable of being performed within one year it is barred pursuant to the Statute of Frauds." Id. Section 432.010; The Cohen Case and the One Year Provision of the Statue of Frauds Fordham law Reviews Vol 25, Issue 4 Article 7 pages 719-729 (1956); Kathy Wallace, V. St. Francis Medical Center 415 S.W.3d 705 (Mo.App. E.D. 2013)(holding that a promise of employment not dissimilar from the alleged promise of commission made over a year prior would not support a breach of contract claim).

As indicated above it is the Plaintiff's contention that the breached agreement was made in 2006, and that as early as 2007 and again in January 2008 Mr. Shaheen the individual with whom the Plaintiff is claiming to have entered into a contract binding the Defendant was indicating said agreement would not be honored. Deposition of Hassanin taken August 4, 2015 at page 92:9-24 (2007 date) and 78:10-19.(2008 date). As suit was not filed until July of 2012 and proof of service (allegedly relating back to common law alternative constructive service which did not reach the Defendant and was said to have been made during last week of 2012) not filed until July 2013 the claim must also fail under Missouri Statute of Limitations. Missouri Revised Statutes § 516.120 (2005).

WHEREFORE, Defendant prays that Plaintiff's Complaint be dismissed.

Dated this 17th day of September, 2015.

                    HANZADA FOR IMPORT & EXPORT COMPANY, LTD., Defendant

By: /s/ Brent Nicholls<br>
<b>Brent Nicholls #22146</b><br>
KN Law, PC, LLO<br>
300 S. 19th St. Ste. 300<br>
Omaha, NE 68102<br>
Ph: 402-502-0600<br>
Fax: 402-614-6540

## CERTIFICATE OF SERVICE

    I, Brent Nicholls, hereby certify that on September 17th, 2015 I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the attorneys for the Plaintiff listed therein at the addresses indicated in that system.

                                                  Brent Nicholls

**Richard J. Gilloon**
10330 Regency Parkway Drive #100
Omaha, NE 68114
(402) 397−2200
Email: gilloon@eslaw.com

**Nicholas F. Sullivan**
Erickson Sederstrom
10330 Regency Parkway Drive
Ste 100
Omaha, NE 68114
402−397−2200
Email: nsull@eslaw.com

**Kevin D Weakley**
Wallace, Saunders, Austin, Brown &
Enochs, Chartered−OPKS
10111 West 87th Street
Overland Park, KS 66212
913−752−5526
Fax: 913−888−1065
Email: kweakley@wsabe.com

**Edwin H. Smith**
Polsinelli PC − StJ
3101 Frederick Avenue
St. Joseph, MO 64506
(816) 271−8033
Fax: (816) 279−3977
Email: esmith@polsinelli.com