IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| HASSANIN ALY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    No. 12-CV-6069-SJ-DGK |
| | ) |
| HANZADA FOR IMPORT & EXPORT | ) |
| COMPANY, LTD., | ) |
| | ) |
|     Defendant. | ) |

## ORDER DENYING MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL

A jury found Defendant Hanzada for Import & Export Company, Ltd. ("Hanzada"), liable for breach of contract. Challenging that verdict, Hanzada has filed a renewed motion for judgment as a matter of law (Doc. 158) and a motion for a new trial (Doc. 160). For the reasons below, each motion is DENIED.[1]

**Background**

The Court reviews these motions by relying on "its own reading of the evidence." *Lincoln Composites, Inc. v. Firetrace USA, LLC*, — F.3d —, 2016 WL 3186895, at *2 (8th Cir. 2016). Hanzada is an Egyptian beef importer. Around 2006, Hanzada was hoping to establish an import-export relationship with National Beef Packing Company in Kansas City, Missouri. A Hanzada employee named Samy Sobhy Eliwa, who also went as Samy Shaheen ("Shaheen"), sought help from Plaintiff Hassanin Aly ("Aly"), a business promoter. Shaheen orally agreed, on Hanzada's behalf, to pay Aly a percentage of all the beef that Hanzada imported in exchange for Aly's help. Hanzada has claimed throughout the case that Shaheen was not authorized to enter

---

[1] Hanzada requests a hearing to present oral argument on its motions (Doc. 158 at 2; Doc. 160 at 2). Because the record adequately presents the relevant facts and legal contentions, the Court denies Hanzada's requests. *See* Fed. R. Civ. P. 78(b).

contracts on Hanzada's behalf. Instead, Hanzada claims that its president and chief executive officer, Selim Sobhy Eliwa ("Eliwa"), was the only person authorized to do that.

Claiming that Hanzada was bound to the contract but failed to pay him all due commissions, Aly sued for breach of contract in July 2012. Aly, a dual citizen of Egypt and the United States—specifically, Ohio—served Hanzada in Cairo in December 2012. The case creaked along for three more years, during which time Hanzada moved for summary judgment on the grounds that the statute of frauds bars Aly's claim and that Shaheen had no authority to enter contracts on Hanzada's behalf. The Court denied the motion.

As the Court has previously chronicled, Hanzada missed several deadlines in this case, for which it was sanctioned once (Doc. 94). The trial was always set for early 2016; after two brief continuances, the Court set a trial date of April 12, 2016. Nonetheless, on March 25, 2016, Hanzada moved to continue the trial setting, asserting that Eliwa wanted to testify but was having problems obtaining a visa to travel from Egypt to the United States. Eliwa swore in an affidavit that he was able to secure a visa appointment at the U.S. embassy "[s]everal weeks ago," and needed just a few days' continuance to be able to attend (Doc. 118-1 at 1). The Court denied the motion, citing the age of the case and the number of extensions it had already granted Hanzada.

At trial, the Court allowed Eliwa to testify via videolink from Egypt. The Court cut off the testimony after experiencing problems with the video feed, the interpreter, interruptive people in the same room as Eliwa, and Eliwa himself, who appeared to be evasively taking mid-testimony counsel from other people in the room. On agreement from both parties, the Court told the jury to disregard Eliwa's testimony entirely: "Ladies and gentlemen of the jury, I will

2

direct you to disregard everything you just heard from this witness. I don't believe it's helpful or has probative value." (Doc. 182 at 408).

Having lost Eliwa's testimony, Hanzada presented no evidence of its own. Through Aly's witnesses, Hanzada moved to admit Exhibit 501, a commercial registry filed with the Egyptian Ministry of Industry and Foreign Trade. The Court excluded Exhibit 501 as irrelevant and confusing. (The exhibit is attached as an appendix to this Order.)

The jury returned a $1,591,286.60 verdict in Aly's favor.

## Discussion

Between its two motions, Hanzada seeks three kinds of relief. First, it argues that the Court must vacate the judgment as void because the Court lacks jurisdiction over this case. Second, Hanzada asks the Court to enter judgment as a matter of law in its favor on the basis that the jury had no legally sufficient evidentiary basis to return a pro-Aly verdict. Third, it argues the Court should grant a new trial because it issued erroneous rulings in limine and at trial.

**I. Because the Court has jurisdiction over the case and the parties, there are no grounds to void the judgment.**

Hanzada argues that the Court must void its judgment for two reasons: the Court lacks subject-matter jurisdiction, and it lacks personal jurisdiction.

**A. The Court has subject-matter jurisdiction because although Aly is a dual citizen, the Court considers only his Ohio citizenship, thus establishing diversity of citizenship with Hanzada of Egypt.**

Hanzada argues that the Court lacks subject-matter jurisdiction over this case because both Aly and Hanzada are Egyptian citizens, and the relevant statutes do not permit the exercise of jurisdiction when a lawsuit has only foreign citizens. Aly responds that he avoids that rule because he is a dual citizen of Egypt and the United States, specifically Ohio.

A court may relieve a party from a "void" judgment.  Fed. R. Civ. P. 60(b)(4).  "Absence of subject matter jurisdiction may, in certain cases, render a judgment void."  *Kan. City. S. Ry. Co. v. Great Lakes Carbon Corp.*, 624 F.2d 822, 825 (8th Cir. 1980) (en banc).  Because the jurisdictional issue here is arguably not enough to compel relief under Rule 60(b)(4), *see id.*, the Court instead construes Hanzada's motion as one brought under Rule 12(b)(1).

Under that Rule, the Court must dismiss a case over which it lacks subject-matter jurisdiction.  "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised . . . at any stage in the litigation, even after trial and the entry of judgment."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *see* Fed. R. Civ. P. 12(h)(3).  When entertaining a factual Rule 12(b)(1) attack, as here, the court assesses all record evidence to determine whether subject-matter jurisdiction exists.  *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914–15 (8th Cir. 2015).  The court makes this determination from evidence appearing anywhere in the record, including at trial.  *Yeldell v. Tutt*, 913 F.2d 533, 537–38 (8th Cir. 1990).

Hanzada specifically claims that the Court lacks "alienage diversity jurisdiction," which is the variety of federal jurisdiction Aly invoked.  *See JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88, 90 (2002).  Alienage diversity jurisdiction vests only if the action is between "citizens of a State and citizens or subjects of a foreign state."  28 U.S.C. § 1332(a)(2).  To qualify under this statute, the plaintiff may not be a citizen of the same foreign country as the defendant.  *Mossman v. Higginson*, 4 U.S. (4 Dall.) 12, 13 (1800); *see Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989).

This scheme does not address what to do with a dual citizen: should the court count only his U.S. state citizenship, only his foreign citizenship, or both?  Dual citizenship's impact on diversity is an issue of first impression for this Circuit, but one that has been addressed by six

4
Case 5:12-cv-06069-DGK   Document 188   Filed 07/14/16   Page 4 of 16

other courts of appeals. They uniformly hold that if a party is a dual citizen of a U.S. state and of a foreign country, then a federal court ignores the party's non-American citizenship for diversity purposes. *See, e.g.*, *Sadat v. Mertes*, 615 F.2d 1176, 1187 (7th Cir. 1980) ("[O]nly the American nationality of the dual citizen should be recognized under 28 U.S.C. § 1332(a).").[2] After all, a "person can have only one domicile at a time," *Ellis v. Se. Constr. Co.*, 260 F.2d 280, 281 (8th Cir. 1958), and since alienage diversity jurisdiction aims to keep truly international disputes out of state courts, *JPMorgan Chase*, 536 U.S. at 94–96, allowing a foreigner to be sued by a citizen of a U.S. state even if he happens to have dual citizenship with another country does not frustrate the purpose of alienage diversity.

Hanzada urges the Court to reject this *Sadat* rule and follow a reasoning supposedly espoused by the Fifth Circuit, but the decisions it relies on are readily consistent with *Sadat*. *See Smith v. Carter*, 545 F.2d 909, 912 (5th Cir. 1977) (precluding an American citizen *living abroad* from invoking alienage diversity jurisdiction, which comports with *Sadat* because that decision still requires the American citizen to be domiciled in a U.S. state); *Coury v. Prot*, 85 F.2d 244, 250 (5th Cir. 1996) (adopting *Sadat*).

Hanzada urges the Court to treat Aly like a corporation, for which § 1332 expressly counts two citizenships equally: the place of incorporation, and the principal place of business. 28 U.S.C. § 1332(c)(1). But this statutory distinction is not readily transposed to natural persons, who could have a "principal place of business," but not a state of "incorporation." If Hanzada is arguing that § 1332 sanctions multiple citizenships generally, that position is also untenable. Given the many types of parties whose citizenship the statute does not address—unincorporated

---

[2] *See also, e.g.*, *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir. 1991); *Frett-Smith v. Vanterpool*, 511 F.3d 396, 399–400 (3d Cir. 2008); *Coury v. Prot*, 85 F.3d 244, 250 (5th Cir. 1996); *Büchel-Ruegsegger v. Büchel*, 576 F.3d 451, 454 (7th Cir. 2009); *Sanchez v. Aerovias De Mex., S.A. De C.V.*, 590 F.3d 1027, 1028 n.1 (9th Cir. 2010); *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1341 (11th Cir. 2011). The First, Fourth, Sixth, Eighth, Tenth, District of Columbia, and Federal Circuits do not appear to have decided this issue.

businesses, stateless persons, American expatriates, and dual citizens, to name a few—the Court holds the statute's peculiar two-citizenships scheme applies solely to corporations. *See, e.g.*, *Dep't of Homeland Sec. v. MacLean*, 135 S. Ct. 913, 919 (2015) (applying this interpretive presumption to conclude of a certain statute, "Congress's choice to say 'specifically prohibited by law' rather than 'specifically prohibited by law, rule, or regulation' suggests that Congress meant to exclude rules and regulations."). Without a specific statutory exception like the one created for corporations, Hanzada's approach succumbs to the general rule that a "person can have only one domicile at a time." *Ellis*, 260 F.2d at 281. The *Sadat* rule of dual citizenship is sound, so the Court adopts that rule.

The Court previously found, and Hanzada does not now contest, that when Aly filed his complaint Hanzada was a citizen of Egypt and Aly was a dual citizen of Ohio and Egypt who was domiciled in Ohio. Applying the *Sadat* rule, the Court counts Aly as only an Ohio citizen and ignores his Egyptian citizenship. *See Sadat*, 615 F.2d at 1187. Hanzada is solely an Egyptian citizen. Therefore, there is diversity of alienage and the Court may properly hear this case. *See* 28 U.S.C. § 1332(a)(2); *Mossman*, 4 U.S. at 13. Hanzada's challenge to subject-matter jurisdiction is denied.

### B. Hanzada fails to give the Court new facts or law to reconsider its earlier rulings that it has jurisdiction over Hanzada.

Hanzada alternatively argues that the judgment is "void" because it was not subject to the Court's personal jurisdiction. The Court exhaustively addressed this issue two years ago when it found that Hanzada's contacts with Missouri were sufficient to expose it to personal jurisdiction. *Aly v. Hanzada for Import & Export Co.*, No. 12-CV-6069-SJ-DGK (Doc. 34), 2014 WL 2829513, at *7–10 (W.D. Mo. June 23, 2014). Hanzada renewed its argument two months later, which the Court denied with prejudice as cumulative. *Aly v. Hanzada for Import & Export Co.*,

No. 12-CV-6069-SJ-DGK (Doc. 53), 2015 WL 58475, at *3 (W.D. Mo. Jan. 5, 2015).  Hanzada now challenges personal jurisdiction for the third time.

A court may relieve a party from a "void" judgment.  Fed. R. Civ. P. 60(b)(4).  A lack of "personal jurisdiction" may render a judgment "void."  *Printed Media Servs., Inc. v. Solna Web, Inc.*, 11 F.3d 838, 842–43 (8th Cir. 1993); *see Kan. City. S.*, 624 F.2d at 825 (limiting when a jurisdictional defect can void a judgment).

Hanzada fails to convince the Court that it erred in previously finding personal jurisdiction over Hanzada.  Rather, Hanzada's invocation of Rule 60(b)(4) is merely a Trojan horse concealing a motion to reconsider.  The Court rejects this attempt.  Hanzada's challenge to personal jurisdiction is denied.

**II. Because Hanzada offers only successive arguments in its renewed motion for judgment for a matter of law, the Court has no ground to overturn the jury's verdict.**

At the close of Aly's case, Hanzada moved for judgment as a matter of law (Doc. 142), which the Court denied.  Hanzada now renews that motion.  It argues that the jury had no legally sufficient basis to find for Aly, because: (1) the Missouri statute of frauds bars Aly's claim; and (2) Shaheen had no authority to enter into a contract with Aly on Hanzada's behalf.

After trial, a party may renew an earlier-filed motion for judgment as a matter of law.  Fed. R. Civ. P. 50(b).  The court must grant the motion if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party."  Fed. R. Civ. P. 50(a)(1).  "All factual inferences are drawn in favor of the non-moving party, and the court avoids making credibility assessments or weighing the evidence."  *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007).

First, Hanzada argues the statute of frauds bars enforcement of the contract, so the jury had no legally sufficient basis to find Hanzada breached the contract.  The Court previously

7

rejected this argument, finding that the statute of frauds did not apply to the Aly-Hanzada contract because it could have been completed within one year. *Aly v. Hanzada for Import & Export Co.*, No. 12-CV-6069-SJ-DGK (Doc. 107), 2016 WL 270484, at *2–3 (W.D. Mo. Jan. 21, 2016) ("*Aly III*") (citing Mo. Rev. Stat. § 432.010; *Crabb v. Mid-American Dairymen, Inc.*, 735 S.W.2d 714, 716 (Mo. 1987)).

Hanzada suggests the parties expected the contract to last at least two years, thus triggering the statute of frauds. Such an expectation is irrelevant, because no evidence at trial—when viewed most favorably toward Aly—established that this expectation was somehow a part of the contract itself. Looking strictly at the contract's terms, *see DeBaliviere Place Ass'n v. Veal*, 337 S.W.3d 670, 676–77 (Mo. 2011), the Court finds the parties could have performed the contract in less than a year, so the statute of frauds does not apply. The Court is unconvinced that its earlier order committed legal error, and no facts adduced at trial dictate a different outcome. Therefore, this ground for entering judgment in Hanzada's favor is denied.

Second, Hanzada argues that the jury lacked a legally sufficient basis to find Hanzada had breached the oral contract, because the evidence showed that Hanzada's putative agent Samy Shaheen actually lacked authority to bind Hanzada to contracts with Aly. The Court rejected this argument in denying summary judgment, finding that Samy Shaheen had the implied actual authority as Hanzada's president to bind Hanzada to contracts. *Aly III*, 2016 WL 270484, at *2 (citing *Nichols v. Prudential Ins. Co. of Am.*, 851 S.W.2d 657, 661 (Mo. Ct. App. 1993); *Fair Mercantile Co. v. Union-May-Stern Co.*, 221 S.W.2d 751, 753 (Mo. 1949)). Viewing the trial evidence most favorably toward Aly, the Court sees no reason to depart from its earlier ruling. Therefore, this ground for entering judgment in Hanzada's favor is denied.

### III. Hanzada does not identify any trial errors made by the Court, much less ones serious enough to warrant a new trial.

Hanzada next moves the Court to order a new trial. After a jury trial, a court may grant a new trial if necessary to "avoid a miscarriage of justice." *Mich. Millers Mut. Ins. Co. v. Asoyia, Inc.*, 793 F.3d 872, 878 (8th Cir. 2015); Fed. R. Civ. P. 59(a)(1)(A). Hanzada argues that the Court made three errors at trial which have contributed to a miscarriage of justice: (1) refusing to continue the trial; (2) improperly excluding evidence; and (3) inappropriately commenting on a witness's testimony.

#### A. The Court fairly refused to continue a four-year-old case at the request of Hanzada, whose weak justification for the continuance reflected a lack of diligence in preparing for trial.

Hanzada first argues that the Court should have continued the trial when it appeared that its sole witness and corporate representative, Eliwa, would not be able to make it to the United States to testify.

In November 2014, when this case was already two years old, the Court set the trial for January 12, 2016. Since setting that date, the Court briefly continued the trial twice. First, in the summer of 2015 it moved the trial back a month to accommodate the parties' joint motion to extend discovery. Second, in January 2016, due to its own scheduling conflict, the Court reset the trial for April 12, 2016, the date on which the trial was eventually held.

On March 25, two and a half weeks before trial, Hanzada moved to continue the trial because Eliwa was having difficulty obtaining travel papers from the U.S. Embassy in Cairo. Eliwa swore that "[s]everal weeks" earlier, he had secured an April 4 visa-approval appointment at the embassy. The Court denied the motion "given the age of this case and the number of the extensions it ha[d] already granted" Hanzada (Doc. 119). Hanzada renewed its request the day

before trial and again on the morning of trial. The Court denied each request, which Hanzada claims was error.

"Continuances are not generally favored and should be granted only when the movant has shown a compelling reason." *AmerUs Leasing, Inc. v. Amkor Int'l Corp.*, 187 F.3d 640, 1999 WL 639107, at *3 (8th Cir. 1999) (table decision). Several factors bear on whether a court should grant a continuance. First, the court should consider "the nature of the case and whether the parties have been allowed adequate timing for trial preparation." *United States v. Moe*, 536 F.3d 825, 831 (8th Cir. 2008). The Court acknowledges that much of the evidence in this case comes from Egypt, and that Eliwa lives in Egypt, a country that has experienced recent civil unrest. However, Hanzada had over three years to prepare for these challenges and to arrange for witnesses' visas. If Hanzada believed this case could not be conveniently litigated here, it should have moved for *forum non conveniens* dismissal. Therefore, the case's international flavor did not support granting a continuance.

Second, the court should consider "the diligence of the party requesting the continuance." *Moe*, 536 F.3d at 831. The Court finds ludicrous Hanzada's claim that it was "ready for trial" when it asked for a continuance (Doc. 161 at 4). Hanzada was not diligent in using the three years between service and trial to prepare its witnesses. It should have known all along that Eliwa would need to testify. It should also have discovered that Eliwa's visa would take time to obtain but would also last five years upon issuance,[3] giving them no reason to wait until the last

---

[3] U.S. Citizenship and Immigration Services eventually issued Eliwa a B1/B2 non-immigrant visa. *See* 8 U.S.C. § 1101(a)(15)(B) (classifying an alien "who is visiting the United States temporarily for business or temporarily for pleasure" as one pursuing a B visa); 9 *Foreign Affairs Manual* § 402.2-5(B)(4) ("Aliens should be classified B1 visitors for business, if otherwise eligible, if they are traveling to the United States to . . . . Litigate."). According to the State Department's Bureau of Consular Affairs, B1/B2 visas issued to Egyptian are valid for five years after issuance. *Egypt Country Reciprocity Schedule*, U.S. Dep't of State, https://travel.state.gov/content/visas/en/fees/reciprocity-by-country/EG.html (last visited July 14, 2016). Indeed, Eliwa's visa, issued on April 11, 2016, does not expire until April 9, 2021.

moment. Yet Eliwa apparently never made efforts to obtain a visa until "[s]everal weeks" before March 25, 2016.

Moreover, Hanzada knew that the case's Egyptian nexus posed special problems. For example, in January 2014 it recognized the upheaval caused by a constitutional referendum in that country. *E.g.* (Doc. 27 at 3 n.1) (justifying the absence of a certain affidavit with the "security and other measures associated with the constitutional referendum" which precluded Hanzada from accessing "a U.S. notary at the U.S. embassy").

Because Hanzada has known that there would be an early 2016 trial since at least 2014, and given the anticipatable visa issues, Eliwa's failure to request an embassy appointment until weeks before trial is inexplicable and inexcusable. Hanzada was simply not diligent. *See AmerUs Leasing*, 1999 WL 639107, at *3 ("Although [the prospective witness who could not attend trial for employment reasons] apparently knew for quite some time that his employer would require him to begin work before the start of trial, the appellants did not file a motion for continuance until the eve of trial."); *Fairway Ctr. Corp. v. U.I.P. Corp.*, 502 F.2d 1135, 1143 (8th Cir. 1974) (finding no diligence by a movant who sought a continuance at trial to take discovery on the issue of mutual assent in a contract, where "[i]t was clear at an early stage that the existence of a legally binding contract was in issue and that whether or not there had been mutual assent was a key element"). This factor strongly supports the Court's decision to deny the continuance.

Third, the court considers the opposing party's conduct. *Moe*, 536 F.3d at 831. Eliwa's visa problems are wholly unrelated to Aly's conduct, so the third factor does not apply.

Fourth, the court should have considered "the effect of the continuance and whether a delay will seriously disadvantage either party." *Id.* It is unclear whether denying the

continuance hindered Hanzada's defense. Given Eliwa's credibility, he might have damaged Hanzada's prospects if he had appeared and testified in person. At any rate, Hanzada was not unfairly prejudiced since it bore responsibility for Eliwa's non-appearance. Granting the continuance, on the other hand, would have unfairly prejudiced Aly, who had already waited years to have his day in court. While such an inconvenience is normally given little weight, *see id.* at 832, because Hanzada had already missed at least five deadlines, and had already been sanctioned for it, the Court finds an additional delay would have unfairly prejudiced Aly. *See Grunewald v. Mo. Pac. R.R. Co.*, 331 F.2d 983, 987 (8th Cir. 1964) (Blackmun, J.) (finding a district court's refusal to continue a trial to be proper when there were four previous continuances and the case was set for trial five prior times).

Fifth, the court should consider "the asserted need for the continuance, with weight to be given to sudden exigencies and unforeseen circumstances." *Id.* at 831. As discussed above, this problem was completely avoidable by Hanzada. Hanzada cites a case where the *district court* created a conflict by sua sponte rescheduling the trial date, then refused to move the trial date again to accommodate the new conflict. *DiMercurio v. Malcom*, 716 F.3d 1138, 1140–41 (8th Cir. 2013) (finding the district court abused its discretion in denying the continuance).

Here, Hanzada created the need for a continuance, not the Court. In fact, the Court's two earlier, brief continuances of trial actually benefitted Hanzada by unexpectedly giving Eliwa more time to obtain his visa. Therefore, Hanzada's asserted need did not justify continuing the trial again.

On these factors, the Court finds that its denial of a continuance was not an error, much less a miscarriage of justice. This ground for a new trial is denied.

### B. Because a copy of Hanzada's commercial registry filed in Egypt was irrelevant, the Court did not err in excluding it.

Next, Hanzada argues that the Court erred in excluding Exhibit 501. Exhibit 501 is a Commercial Register that Hanzada filed with the Egyptian authorities. Hanzada wanted to admit Exhibit 501 to prove that Selim Sobhy Eliwa, not Samy Shaheen, was the only person Hanzada authorized to make deals on its behalf. The Court excluded Exhibit 501 as irrelevant and confusing. *See* Fed. R. Evid. 402, 403.

The Court is unconvinced that it erred in excluding Exhibit 501. "A trial court must determine whether an evidentiary ruling was so prejudicial as to require a new trial which would be likely to produce a different result." *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1058–59 (8th Cir. 2005). Federal Rule of Evidence 402 mandates the exclusion of irrelevant evidence. Exhibit 501 is irrelevant because it lists the corporate officers as of 2014. Because Exhibit 501 does not say who the corporate officers were in 2006, when the oral contract was made, Exhibit 501 is irrelevant. This was reason enough for the Court to exclude the exhibit. Therefore, the Court did not err, much less make an error that requires a new trial.[4]

### C. The Court's remark on Selim Sobhy Eliwa's testimony was not prejudicial to Hanzada.

Finally, Hanzada argues that the Court tainted the jury with certain comments, including its oral instruction for the jury to disregard Eliwa's testimony: "Ladies and gentlemen of the jury, I will direct you to disregard everything you just heard from this witness. I don't believe

---

[4] Hanzada's brief appears to conflate Exhibit 501 with Doc. 89-2, a document filed earlier in the litigation. The documents are not coextensive. Although Exhibit 501 includes the substance of Doc. 89-2, the parties' discussion at trial was directed solely at parts of Exhibit 501 that do not match Doc. 89-2.

13

Case 5:12-cv-06069-DGK   Document 188   Filed 07/14/16   Page 13 of 16

it's helpful or has probative value." (Doc. 182 at 408). Hanzada claims this comment was improper advocacy by the Court in favor of Aly.[5]

"The court may make any statement about the character or form of the evidence . . . ." Fed. R. Evid. 103(c). The only limitation on this discretion is that the comments must "not preclude a fair evaluation of the evidence by the jury." *United States v. White*, 671 F.2d 1126, 1130 (8th Cir. 1982). To decide whether the Court crossed that line, "[t]he propriety of the judge's comments must be viewed in the context of the complete charge to the jury." *United States v. Neumann*, 887 F.2d 880, 883 (8th Cir. 1989) (en banc). A new trial is merited only when a judge's comments were so pervasive as to affect the outcome of the trial and result in a miscarriage of justice." *Bunting v. Sea Ray, Inc.*, 99 F.3d 887, 890 (8th Cir. 1996).

Here, the Court's comment was appropriate. It was made after the Court indulged Hanzada's eleventh-hour arrangement for video testimony, and after both parties agreed the Court should strike Eliwa's testimony. The Court did not endorse or condemn any evidence; Eliwa's testimony was rejected and thus not evidence. Given the many obvious challenges Eliwa, the Court, the attorneys, and the interpreter were having with Eliwa's testimony, the Court finds that the jury could not have reasonably interpreted its comment about Eliwa's testimony not being helpful or proving anything to apply to *all* evidence favoring Hanzada. Therefore, the Court's comment did not preclude the jury from fairly evaluating any evidence. *See White*, 671 F.2d at 1130 (finding no unfair prejudice in a judge's comment that he did not find the defendants' case law to be relevant); *cf. Quercia v. United States*, 289 U.S. 466, 468, 471–72 (1933) (finding a court overstepped its bounds by saying of a witness whose testimony was

---

[5] Hanzada complains of other comments made the Court. None of these other comments were made in the presence of the jury. Therefore, they did not prejudice the jury against Hanzada. *See Bunting v. Sea Ray, Inc.*, 99 F.3d 887, 890 (8th Cir. 1996).

admitted into evidence, "I think that every single word that man said, except when he agreed with the Government's testimony, was a lie.").

Even if the Court was commenting on the evidence, the comment was not unfair when viewed in context of the entire trial. Hanzada points to no other similar comment the Court made to the jury during the three-day trial. Therefore, the Court's statement did not unjustly pervade the trial. *See Bunting*, 99 F.3d at 890; *cf. Champeau v. Fruehauf Corp.*, 814 F.2d 1271, 1275 (8th Cir. 1987) (affirming the grant of a new trial where the district court interrupted the defense expert's testimony 145 times with comments on the evidence).

Finally, even if the Court's comment somehow suggested to the jurors that they should view Hanzada's case dimly, the jury already knew not to rely on such statements. The Court had earlier given Jury Instruction No. 11: "I have not intended to suggest what I think your verdict should be by any of my . . . comments during the trial." (Doc. 145 at 13). This "instruction[] adequately remedied any harm that might otherwise have resulted from" the Court's comment. *Van Leirsburg v. Sioux Valley Hosp.*, 831 F.2d 169, 173 (8th Cir. 1987); *see Neumann*, 887 F.2d at 883 (finding acceptable a court's comment that the elements of the crime of bank robbery were satisfied "if [the defendant] is the man who did it," in part because the court prefaced them with a warning that it was not telling the jury which facts to find).

In sum, Hanzada establishes no basis for a new trial. Its motion is denied. *See* Fed. R. Civ. P. 59(a)(1)(A).

15
Case 5:12-cv-06069-DGK   Document 188   Filed 07/14/16   Page 15 of 16

**Conclusion**

For the foregoing reasons, the Court DENIES Hanzada's renewed motion for judgment as a matter of law (Doc. 158) and motion for a new trial (Doc. 160).

**IT IS SO ORDERED.**

Date:  July 14, 2016                    /s/ Greg Kays
                                        GREG KAYS, CHIEF JUDGE
                                        UNITED STATES DISTRICT COURT