IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| HASSANIN ALY | ) | |
| | ) | |
| Plaintiff/Judgment Creditor, | ) | |
| | ) | |
| v. | ) | No. 5:12-cv-06069-DGK |
| | ) | |
| HANZADA for IMPORT & EXPORT COMPANY, LTD. | ) ) | |
| | ) | |
| Defendant/Judgment Debtor, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONAL BEEF PACKING COMPANY, LLC, | ) ) | |
| | ) | |
| Garnishee. | ) | |

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

This garnishment action arises from a $1.6 million dollar jury verdict against Hanzada for Import & Export Company, Ltd. for breach of contract. Plaintiff Hassanin Aly seeks to partially satisfy this judgment through a writ of garnishment filed against National Beef Packing Company, LLC. Now before the Court is Aly's motion for summary judgment (Doc. 233). Because there is a genuine dispute of material fact as to whether National Beef held money or credits belonging and due absolutely to Hanzada, the Court DENIES Aly's motion.

**Background and Material Facts**

The Court entered a $1,591,286.60 judgment against Hanzada in April 2016. Aly seeks to satisfy a portion of the judgment through garnishing two payments Hanzada made to National Beef later that year. The payments arose in connection with National Beef distributing beef product to Egypt. National Beef initially sold its product directly to Hanzada, an Egyptian import and export

company. In October 2015, National Beef transitioned to selling to ESCO International Trading LLC instead. ESCO is a third-party distributor that resells and exports National Beef's product to other purchasers, including Hanzada. National Beef states that it did not fully transition to selling only to ESCO until April 2016, due to communication issues and the time required to develop new shipping labels. National Beef claims that that was the last month it did business directly with Hanzada.

Yet, Hanzada transferred $310,000 to National Beef on August 5, 2016, and $370,000 on August 11. Because National Beef no longer sold directly to Hanzada, the company was not expecting the payments and was unsure why Hanzada made them. National Beef credited both payments to Hanzada's standing but inactive account. Hence, on August 12 Aly's account showed a balance of $680,046.50, comprising the two August payments and a leftover credit of approximately $47. Later that day, National Beef debited the $680,046.50 from Hanzada's account and credited it to ESCO's. ESCO had pending orders with National Beef and had informed the Missouri company to soon expect payment. National Beef applied Hanzada's payments to ESCO's orders and shipped ESCO's product in mid-to-late August.

Aly served National Beef with a writ of garnishment on August 10, two days before National Beef debited Hanzada's account. National Beef answered that it possessed no garnishable property, and Aly took exception to this answer on the basis of the August payments. National Beef responded that Hanzada made the payments on ESCO's behalf for product sold and shipped to ESCO. Aly moved for judgment on the pleadings,[1] asking the Court to find the August

---

[1] The garnishor's exception(s) to the garnishee's answers to interrogatories is treated as a complaint and the garnishee's response to those exceptions is treated as an answer. *See Monroe v. Roedder*, 253 F.R.D. 466, 468 (E.D. Mo. 2008); *see also* Mo. Sup. Ct. R. 90.07(c)-(d), 90.10(b); Mo. Rev. Stat. § 525.190.

payments garnishable. The Court denied Aly's motion (Doc. 227). Now, having conducted discovery, Aly moves for summary judgment in his favor in the amount of $680,046.50.

**Standard**

Summary judgment is appropriate when the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Rakes v. Life Invs. Ins. Co. of Am.*, 585 F.3d 886, 893 (8th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588-89 (1986). To survive a motion for summary judgment, the nonmovant must "substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (internal quotations and citation omitted).

**Discussion**

Proceedings in aid of execution of a judgment "must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69. Missouri's garnishment laws thus apply. Garnishment "enables a judgment creditor (the garnishor) to collect the amount of the judgment by seizing the judgment debtor's property when it is in the hands of a third party (the garnishee)." *Baisch & Skinner, Inc. v. Bair*, 507 S.W.3d 627, 629 (Mo. Ct. App. 2016) (citing *State ex rel. Eagle Bank & Trust v. Corcoran*, 659 S.W.2d 775, 777 (Mo. 1983)). Garnishment "freezes the

mutual debts and credits of the garnishee and the judgment debtor at a point in time." *Wenneker v. Phys. Multispecialty Grp., Inc.*, 814 S.W.2d 294, 296 (Mo. 1991).

Garnishable property includes all money, rights, and credits belonging to the judgment debtor that the garnishee possesses or controls between service of the writ of garnishment and the garnishee's answer. Mo. Rev. Stat. § 525.040. To be subject to garnishment, money must be due to the judgment debtor absolutely, "unaffected by liens, prior incumbrances, or conditions of contract." *Heege v. Fruin*, 18 Mo. App. 139, 142 (1885). The garnishor bears the burden of establishing that the garnishee holds money or credits belonging to the judgment debtor. *Bunker v. Hibler*, 49 Mo. App. 536, 545-46 (1892); *see also Cusick v. Cusick*, 201 S.W.2d 437, 440 (Mo. Ct. App. 1947). Critically, the garnishor "can claim no right where the debtor himself could not maintain an action against the garnishee." *State ex rel. Kennedy v. Harris*, 69 S.W.2d 307, 310 (Mo. Ct. App. 1934).

Viewing the evidence in the light most favorable to National Beef, the Court cannot conclude as a matter of law that Hanzada—and therefore Aly—had an absolute right to the $680,046.50 account balance. The parties agree that National Beef received the August 2016 payments from Hanzada and credited them, at least initially, to Hanzada's account. But National Beef disputes that the funds belonged and were owed to Hanzada. It argues instead that Hanzada loaned ESCO the money and made the payments on ESCO's behalf for product prepared and shipped to ESCO.[2] Per this argument, National Beef's obligations never ran to Hanzada. National Beef states that it should have earlier closed Hanzada's account, and that it credited the payments thereto in error.

---

[2] National Beef speculates that ESCO had difficulty obtaining a line of credit, and that Hanzada, as the ultimate customer, paid for the beef product to avoid a belated delivery to Egypt.

4

The parties offer no law pertaining to the garnishment of money paid or held on another's behalf. The Court questions whether Hanzada could have recovered the funds if, as National Beef claims, they immediately became tied up in preexisting contractual obligations running between National Beef and ESCO, as well as between ESCO and Hanzada. *See Balt. & O.R. Co. v. Wheeler*, 18 Md. 372, 379 (1862) ("[G]arnishment cannot have the effect of changing the nature of a contract between the garnishee and the defendant, or of preventing the garnishee from performing a contract with a third person."); *Wheeler v. Thomas*, 31 F. Supp. 702, 702-03 (D.D.C. 1940) (holding that earnest money paid by the debtor under a contract was ungarnishable). Aly does briefly assert that the August payments created a bailment, but he has not shown how. *See May v. Williams*, 531 S.W.3d 576, 582 n.5 (Mo. Ct. App. 2017) (defining and discussing bailments); *see also Fred Harvey, Inc. v. Crooks*, 39 F.2d 466, 467-68 (W.D. Mo. 1930).

If the payments did constitute an express or implied loan[3] to ESCO, they would not be subject to Aly's writ. *See In re Southwestern Glass Co.*, 332 F.3d 513, 518 (8th Cir. 2003) ("[The loan proceeds] became money or credits belonging to [the lendee]."); *United States v. Kristofic*, 847 F.2d 1295, 1296 (7th Cir. 1988) ("As a matter of basic principles, loan proceeds do not remain the property of the lender."); *see also Bunker*, 49 Mo. App. at 539 (involving the garnishment of money loaned to the judgment debtor). The circumstantial evidence of a loan here lifts, however slightly, National Beef's argument above mere speculation. Thus, the Court rejects Aly's motion for the same reason it rejected his motion for judgment on the pleadings: he failed to establish as a matter of law that National Beef held funds belonging and due absolutely to Hanzada.

---

[3] The Missouri Supreme Court defines a loan as "the delivery of a sum of money to another under a contract to return at some future time an equivalent amount with or without an additional sum agreed upon for its use; and if such be the intent of the parties the transaction will be deemed a loan regardless of its form." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. 1976) (internal quotations and citation omitted).

**Conclusion**

Accordingly, Aly's motion for summary judgment (Doc. 233) is DENIED.

**IT IS SO ORDERED.**

Date:  March 8, 2019                                   /s/ Greg Kays
                                                       GREG KAYS, JUDGE
                                                       UNITED STATES DISTRICT COURT