# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## ST. JOSEPH DIVISION

| | | |
|---|---|---|
| HASSANIN ALY, | ) | |
| | ) | |
| Plaintiff/Judgment Creditor, | ) | |
| | ) | |
| v. | ) | No. 5:12-cv-06069-DGK |
| | ) | |
| HANZADA for IMPORT & EXPORT | ) | |
| COMPANY, LTD., | ) | |
| | ) | |
| Defendant/Judgment Debtor, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONAL BEEF PACKING COMPANY, | ) | |
| LLC, | ) | |
| | ) | |
| Garnishee. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This garnishment action arises from a $1.6 million-dollar jury verdict against Hanzada for Import & Export Company, Ltd. for breach of contract. Plaintiff Hassanin Aly seeks to partially satisfy this judgment through a writ of garnishment filed against National Beef Packing Company, LLC. The pending dispute centers on whether National Beef possessed any of Hanzada's property while subject to the writ. Specifically, Aly contends that National Beef should have remitted two payments it received from Hanzada totaling $680,000. National Beef, on the other hand, claims that even though Hanzada paid the money, it belonged to another customer.

The parties waived a bench trial and submitted the matter for resolution based on their closing briefs, joint statement of uncontroverted facts, and previously proffered evidence. Pursuant to Federal Rule of Civil Procedure 52(a), the Court now issues its findings of fact and conclusions of law. Because Hanzada's payments fell within the ambit of the garnishment order,

the Court finds in favor of Aly in the amount of $680,046.50—comprising the two payments and a leftover account credit of approximately $47—plus prejudgment interest and costs.

**Findings of Fact**

National Beef is a meat packer and processor headquartered in Kansas City, Missouri. Hanzada is an Egyptian company that imports and exports beef. National Beef sold beef products directly to Hanzada from August 2008 until October 2015, when it switched to selling to ESCO International Trading LLC in Hanzada's stead. ESCO is a third-party distributor that resells and exports National Beef's wares to other purchasers, including Hanzada. However, due to the time required to develop new customer shipping labels, National Beef did not fully transition away from selling to Hanzada until April 2016.

That same month, the Court entered a $1,591,286.60 judgment in favor of Aly and against Hanzada. To enforce the judgment, Aly served National Beef with a writ of garnishment on August 10, 2016, along with interrogatories inquiring whether the company possessed any "goods, chattels, monies, credits, advances, effects, or other property belonging to Hanzada." The writ's return date was October 17. National Beef denied holding any garnishable property "at the time of service and thereafter," and Aly took exception[1] to this answer based on two payments Hanzada wired directly to National Beef the same month it was served with the writ. The first payment, in the amount of $310,000, arrived on August 5, and the second, in the amount of $370,000, arrived on August 11.

Upon receiving the funds, National Beef credited them to Hanzada's standing but inactive account, bringing its balance to $680,046.50. Since National Beef no longer sold directly to

---

[1] The garnishor's exception(s) to the garnishee's answers to interrogatories is treated as a complaint and the garnishee's response to those exceptions is treated as an answer. *See Monroe v. Roedder*, 253 F.R.D. 466, 468 (E.D. Mo. 2008); *see also* Mo. Sup. Ct. R. 90.07(c)-(d), 90.10(b); Mo. Rev. Stat. § 525.190.

Hanzada, it was not expecting the payments and was unsure why Hanzada made them. National Beef speculated that ESCO had difficulty obtaining a line of credit for its orders and that Hanzada, as the ultimate customer, paid for the beef product to avoid a belated delivery to Egypt. Hence, on August 12, two days after receiving Aly's writ, National Beef debited the $680,046.50 from Hanzada's account and credited it to ESCO's. National Beef then applied the August payments to ESCO's orders and shipped product to ESCO later that month. At the time, National Beef's international credit manager and its employee in charge of account deposits were unaware of the writ and National Beef's obligations thereunder.

### Conclusions of Law

The Court holds that the August 2016 payments and leftover credit belonged to Hanzada and therefore were subject to garnishment.[2] Garnishment "enables a judgment creditor (the garnishor) to collect the amount of the judgment by seizing the judgment debtor's property when it is in the hands of a third party (the garnishee)." *Baisch & Skinner, Inc. v. Bair*, 507 S.W.3d 627, 629 (Mo. Ct. App. 2016) (citing *State ex rel. Eagle Bank & Trust v. Corcoran*, 659 S.W.2d 775, 777 (Mo. 1983)). A writ of garnishment broadly attaches all money, rights, credits, and other effects of the judgment debtor that the garnishee possesses or controls between service of the writ and its return date. Mo. Rev. Stat. § 525.040; Mo. S. Ct. R. 90.01(d), 90.04. Put differently, garnishment "freezes the mutual debts and credits of the garnishee and the judgment debtor at a point in time." *Wenneker v. Phys. Multispecialty Grp., Inc.*, 814 S.W.2d 294, 296 (Mo. 1991) (quoting *Firebaugh v. Stone*, 36 Mo. 111, 115 (1865)).

When Aly served National Beef with a garnishment writ on August 10, the company was still holding the $310,000 that it unexpectedly received from Hanzada five days prior. It received

---

[2] Proceedings in aid of execution of a judgment "must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69. Missouri's garnishment laws thus apply.

an additional $370,000 from Hanzada the following day. National Beef concedes that Hanzada paid the money, but it argues that the funds were ESCO's, since they were paid on ESCO's behalf for ESCO's orders. In National Beef's view, the payments constituted ungarnishable loan proceeds to ESCO. *See In re Sw. Glass Co.*, 332 F.3d 513, 518 (8th Cir. 2003) ("[The loan proceeds] became money or credits belonging to [the lendee]").

Such arguments fail to overcome the fact that the payments originated from Hanzada. National Beef offers no direct evidence of a loan and admits that it lacks any first-hand knowledge of the relationship between Hanzada and ESCO. And although National Beef eventually applied Hanzada's funds to ESCO's account and orders, seemingly without objection, this neither establishes a loan nor shows that the money was otherwise committed through pre-existing contractual obligations. *See Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. 1976) (defining a loan as "the delivery of a sum of money to another under a contract to return at some future time an equivalent amount. . . ." (internal quotations and citation omitted)). Moreover, Hanzada in all likelihood benefited from its payments as the ultimate recipient of the purchased product. Consequently, the Court is convinced that Hanzada simply wired its own funds to National Beef.[3]

National Beef protests that it would be unjust to hold it accountable for the money, since it already shipped $680,000 worth of product to ESCO. It did so at its own peril. To protect itself, it should have held the funds "'in readiness to abide by the decision of the court.'" *Bd. of Regents for Sw. Mo. State Univ. v. Harriman*, 857 S.W.2d 445, 451 (Mo. Ct. App. 1993) (quoting *Potter v. Whitten*, 155 S.W. 80, 88 (Mo. Ct. App. 1913)). As the Missouri Court of Appeals has explained,

---

[3] The Court does not base this determination on National Beef's temporarily crediting the payments to Hanzada's account before transferring them to ESCO's. *See Baisch & Skinner*, 507 S.W.3d at 630 (providing that, at least in the context of banking, "[c]reditors may reach funds in the . . . account of another if the funds actually belong to the debtor").

[a]fter the service of the garnishment writ the debt or property in the hands of the garnishee is regarded as *in custodia legis*, and he becomes custodian of the property for the purpose of the garnishment. His duty is to retain the fund or property even against the true owner, to be disposed of in accordance with the order of the court. The garnishee is a mere stakeholder and must not do any voluntary act to the prejudice of either plaintiff or defendant.

*McEwen v. Sterling State Bank*, 5 S.W.2d 702, 706 (Mo. Ct. App. 1928) (citation omitted); *see also Rubin v. Bassakin*, 130 S.W.2d 224, 228 (Mo. Ct. App. 1939) (describing the proper approachfor a garnishee unsure of the ownership of claimed funds as disclosing available facts, informing interested parties, and leaving to the court the decision of whether the funds are garnishable).

Had National Beef followed this course, ESCO could have intervened and attempted to prove that it somehow owned the money. *See* Mo. Rev. Stat. § 525.090 ("Any person claiming money, effects or credits in the hands of a garnishee, may interplead in the cause . . . ."); Mo. S. Ct. R. 90.09 (setting forth the process for notice and intervention). But as it stands, there is insufficient evidence to conclude that the funds belonged to any party other than Hanzada. And by failing to hold the money and treating it as unencumbered by the writ, National Beef assumed the risk of liability. *See Capitol One Bank v. Edison Credit Union*, 299 S.W.3d 662, 666 (Mo. Ct. App. 2009) ("If a garnishee incorrectly asserts that the funds are not subject to garnishment, the court may enter judgment against [it]." (citing *Potter*, 155 S.W. at 88)); *Rubin*, 130 S.W.2d at 228 ("'[I]f [the garnishee] pays the wrong party before the contest is judicially determined, he cannot justly complain if he is compelled to pay the right party when he has been ascertained by the judgment of the court.'" (quoting *Paul v. Johnson*, 9 Phila. 32, 34 (1871)).

**Conclusion**

Thus, in the end this dispute is relatively straightforward: National Beef received from Hanzada funds that the garnishment writ obligated it to disclose, hold, and remit. Because it failed

to do so, it violated the writ and is liable to Aly in the amount of $680,046.50, plus prejudgment interest and costs. *See* Fed. R. Civ. P. 54(d); Mo. Rev. Stat. §§ 408.020, 525.250; *see also Stevens v. Gwathmey*, 6 Mo. 536, 642-43 (1845). The parties shall submit briefing on the appropriate amount of interest and costs, with Aly's brief due within seven days of this order and National Beef's due within seven days of Aly's filing.

**IT IS SO ORDERED.**

Date:  June 10, 2019                                    /s/ Greg Kays
                                                              GREG KAYS, JUDGE
                                                              UNITED STATES DISTRICT COURT